MILTON DUENKE and ELMER E. VORHOF, Plaintiffs-Appellants, v. THE COUNTY OF ST. LOUIS, MISSOURI, LUMAN F. MATTHEWS, ALVIN V. BARTELSMEYER and ARTHUR W. SCHMID, Judges of the County Court of St. Louis County, Missouri, Defendants-Respondents, RUDOLPH W. ERTING ET AL., Intervenors-Respondents. —No. 40459.—213 S. W. (2d) 492.

Division Two, July 12, 1948.

Motion for Rehearing to Modify Opinion or to Transfer to Banc Overruled, September 13, 1948.

*John A. Nolan* and *Watkins & Erbs* for appellants.

*Kerth & Schreiber* for Intervenors Rudolph W. Erting et al., and *Erwin F. Vetter* and *Herman Barker* for St. Louis County et al., respondents.

[493] ELLISON, J.—The plaintiffs below appeal from a decree of the circuit court of St. Louis County dismissing their petition and finding in favor of the respondent defendants and some 72 intervenors, in a suit to quiet the title to a strip of land dimensioned 40 feet by 126 feet 4 inches, in or adjacent to the north side of Lot 40, Block 5, West Walnut Manor, an unincorporated subdivision of St. Louis County, recorded in plat book 10, pages 440-441, Recorder's Office. Whether the plaintiffs were entitled to prevail depends on whether the vacation of a public but unopened street called Gladys Avenue (platted to occupy the same space) was legally rescinded by the county court of St. Louis County in 1940. That is the only question for decision. But while the instant litigation covers only the small tract aforesaid, it will determine the legality of the street vacation for a distance of over 986 feet, affecting other lots.

The plat of the subdivision shows Gladys Avenue, 40 feet wide, extending east by south along the northerly side thereof from Jennings Station road to the city limits of St. Louis, and bounded on the other (north) side by the right of way of the Wabash Railway Company. The avenue was not opened as a thoroughfare, and some industrial establishments were located therealong. On November 4, 1940, the abutting property owners on both sides of the avenue, as far east as West Hodiamont Avenue, filed a petition in the county court praying the vacation thereof for that distance. Among these petitioners was a Fix Fuel & Material Company. On November 15 the county court entered an order accordingly, which was spread on its own records and in the recorder's office (book 1720, p. 530). There is no claimed irregularity in these vacation proceedings, which were had under Sec. 7320, R. S. 1939-Mo., R. S. A. About six weeks later, on January 31, 1941, during the same term of the county court, the court entered the following order:

"November Term, 1940, in the County Court of said County, on the 31st day of January, 1941, the following among other proceedings were had, viz.: In the matter of petition for vacating Gladys Avenue, a forty foot roadway between Jennings Station Road and Hodiamont Avenue, adjacent to the south line of the Wabash Railway Company. (Fix Fuel and Material Company, a corporation, et al., Petitioners.)

"It is Ordered by the Court that the order in the premises dated November 15, 1940, granting petition of Fix Fuel & Material Company, a corporation, et al. for vacation of Gladys Avenue between Jennings Station Road and Hodiamont Avenue, be Rescinded, Set Aside and for Naught Held.

"Clifford Corneli, Presiding Judge."

No appeal was taken from either the foregoing vacation order, or the rescinding order just quoted. However, it further appears that on the same day (January 31) the latter order was entered, a petition was filed in the county court by a Mr. Deck, and other abutting property owners, to *deny* the vacation of the *whole or any part* of Gladys Avenue (a broader subject matter than that covered by the Fix Fuel petition). On the same day the county court ordered this Deck petition received and filed, and continued the cause to February 10. On that day the court ordered the cause continued generally.

On March 14, 1941, a petition was filed by certain *citizens* (it does not say property owners) asking the county court to *accept* Gladys Avenue as a county road throughout its whole length. This petition also was ordered received, filed and referred to the county highway engineer—who made a report, the contents of which are not shown. But there the record stops. There is no showing that the county court ever took action on these dissenting and "accepting" petitions.

Most of the appellants' evidence consists of the foregoing record recitals, but one witness for them, Mr. C. W. Detjen, attorney for the Fix Fuel & Material Company, a signer of the vacating petition, testified that he was in the county court room on some other business on the morning of January 31, 1941, the date when the county court's vacation order of November 15, [494] 1940 was rescinded. He stated that Judge Mueller, one of the county judges, told him "there was quite a lot of opposition to the fact that this street had been vacated;" and declared, " 'I think we may have to set that aside.' " Mr. Detjen said he told the judge he doubted the court's authority to do it, and that if such a step was contemplated he would like to have notice of it; and the judge promised he would be heard. A great number of people were in the court room, but the court appeared to be in recess and Mr. Detjen left.

The next day, February 1, the clerk of the court wrote him a letter advising him there would be a hearing on the vacation of Gladys Avenue on February 10. He appeared on that date and the court announced to the audience that "the matter they were concerned with already had been taken care of, and that they (the court?) would receive the petition and file it, and it would be filed or held in the court and continued . . ." The witness said he did not know the order of January 31 rescinding the vacation order of November 15 had already been made. But it should be remembered the record shows the "Deck" petition, supra, asking the court to deny the vacation of the whole or any part of the avenue, had been filed and received on January 31, the same day the vacating order was rescinded, and the cause was continued thereon to February 10. Judge Mueller may have had this petition in mind in talking to Mr. Detjen.

Appellants do not contend the filing of this Deck petition kept the proceeding open and prevented the recision of the vacating order

from being a final determination of the issue. Their legal contentions are: (1) that the county court acted in a purely administrative, and not in a judicial capacity; (2) that it had power to do only one thing —namely, either to grant or deny the vacating petition; (3) and when it had ordered the vacation its power was spent, and it could. not thereafter assume to exercise further authority by rescinding the vacating order. On the other hand, the respondents maintain: (1) that the county court was a constitutional court of record under Art. VI, Sec. 1, Const. Mo. 1875; (2) and that it acted judicially in entering the vacating order, and had power during the same term to rescind that order.

On their assignment that the county court acted purely administratively, appellants rely strongly on St. L., I. M. & S. Ry. Co. v. City of St. Louis, 92 Mo. 160, 164-6, 4 S. W. 664, decided in 1887, where the railroad had petitioned the county court of St. Louis county for an order authorizing it to lay its tracks on certain streets and alleys of the City, and the City and various persons had objected, contending the county court had no jurisdiction over the subject matter. Nevertheless, the county court made the order, and the City appealed to the circuit court. The railroad, by motion in the circuit court, challenged the City's right to prosecute the appeal and the circuit court sustained the motion, whereupon the City appealed to this court which affirmed that ruling.

In so deciding, this court held the right of appeal from county courts to circuit courts existed under the then general statutes, Sec. 1102(4) and Sec. 1210, R. S. 1879, where the county court had acted *judicially,* but not where it acted only .ministerially or administratively; and that these statutes applied only to such judgments and orders as were susceptible of a trial anew in the circuit court. Then the decision pointed out that the railroad was not proceeding under the foregoing general statutes, but relied on its charter granted by special legislative Acts, Laws Mo. 1837, p. 270, sec. 11; Laws Mo. 1851, p. 481, sec. 5. These Acts authorized the railroad to build its track along and across any public road, but provided that before such rights should vest in the railroad it should apply therefor to the proper county and file a plat; "and if the county court are satisfied that no great injury will be done to the public, they may by an order of said court give the right of way to said company to use the same for that purpose." There was no provision for a remonstance, public notice or trial.

This railroad decision concluded: that under the company's special charter the county court acted as the agent of the State in the management .of the public highways; that the proceeding was not adversary; that the right to grant the privilege rested in the *administrative* discretion of the county [495] court, which was not reviewable; and that

to be reviewable on appeal a controversy or issue must be judicial and *"susceptible of a trial anew."*[1]

Appellants here stress this last ruling. They say it makes the instant vacating order of the county court administrative, rather than judicial, because there is no statutory provision in Sec. 7320, supra, for an appeal from a county court order vacating a *platted* public road; and hence a trial de novo in the circuit court is precluded. This statute, ever since it was Laws Mo. 1866, p. 201, Sec. 6, and Sec. 5051, R. S. 1879, has always appeared in the chapter on Municipal Corporations. On the other hand appellants concede that Sec. 8483, R. S. 1939-Mo. R. S. A. does allow an appeal to the circuit court from a county court order vacating "a public road", but they maintain that statute applies only to such public roads as are contemplated by the chapter on Roads and Bridges, in which it appears. That chapter deals, at least mainly, with roads established by the county court. Sec. 8483 was placed therein by Laws Mo. 1921, p. 594, to cure an omission of the right to appeal from a road vacation in the drastic road law revision made by Laws Mo., 1917, p. 442, p. 448, Sec. 7, p. 449, Sec's 11, 12. Theretofore there had been such a statute at least since 1877.[2] We shall extend the opinion, perhaps unduly, to consider this contention, because it appears to be a question of first impression and appellants chiefly rely on it.

First, comparing the two statutes. Sec. 7320 provides that whenever a tract of land outside the limits of any town or city shall have been subdivided, and streets, avenues or roads marked on the recorded plat, it shall be lawful for the county court to vacate them, upon petition of the owners of the abutting land. Publication of notice in a specified manner is required. Then the statute goes on to provide: "and if *no person interested* in such subdivision *shall appear and show cause* to the court *why the vacation should not be made,* the court may make the order for the vacation as requested in the petition."

Sec. 8483 provides: "In *all* cases wherein it is sought to vacate a public road *for any purpose by petition as now provided by law,* there shall exist the right of appeal from the ordering and *judgment* so vacating *any public road,* from the county court to the circuit court by any party in interest in common as remonstrators, *or as an individual affected thereby in any manner,* . . . (then prescribing the procedure for the appeal)."

It might be well argued that the earlier road vacation appeal statutes, just cited in marginal note 2, applied only to vacations under the Road law. They all applied equally to "opening, changing or vacating" a public road, and the first two of these were authorized by that law alone. Furthermore, the vacation statute therein required

---

[1]Italics in quotations are ours unless otherwise noted.
[2]2 Wagner Stats., p. 1230, sec. 71; Laws Mo. 1877, p. 399, secs. 25, 37; R. S. 1879, Sec's 6955, 6967; R. S. 1909, Sec's 10440, 10445.

(and still does, Sec. 8482, R. S. 1939-Mo. R. S. A.) a petition signed by twelve freeholders, the same as for a petition for the establishment of a road thereunder. But the statute allowing an appeal from road *vacations* was omitted from the 1917 Act, and for four years there was none. And when Sec. 8483 was enacted in 1921, the Legislature started anew. That statute was and is limited to road vacations only. As shown by the parts thereof quoted above in italics, it applies to *all* such proceedings for *any* purpose, if founded on a petition under an existing law. And it refers to the order vacating *any* public road as a *judgment*.

We think the broad terms of this statute include road vacation proceedings under Sec. 7320. By virtue of the recorded plat the county would acquire title to land within the designated boundaries of a public road for use as such. Sec. 12809, R. S. 1939-Mo. R. S. A. (last sentence); Evans v. Andres, 226 Mo. App. 63, 71-2(3), 42 S. W. (2d) 32, 34(3). Sec. 7320 did and does require a petition for the vacation, and it was an existing law when Sec. 8483 was enacted, and still is. Furthermore, Sec. 8483 not only allowed an appeal by remonstrators—who alone could contest the vacation under the then Road law, Sec. 10634, R. S. 1919; Sec. 8483, supra. It also granted the [496] same privilege to "any party in interest . . . as an individual affected thereby in any manner." These words were held in DeJarnett v. Tickameyer, 328 Mo. 153, 157-8, 40 S. W. (2d) 686, 687(2) to give the right of appeal not only to a remonstrator; but also to "any person, although not a remonstrator, who would be individually affected by the vacation of the road . . ." And this provision apparently takes cognizance of the closing words in Sec. 7320: "and if no person interested in such subdivision shall appear and show cause to the court why the vacation should not be made"—the county court may order it.

The only question in our minds is whether the words just quoted from Sec. 7320 would make it structurally subject to appeal under Sec. 8483. These words might seem to limit the jurisdiction of the county court in making a road vacation order, to default cases—where no interested party appears and shows cause against it. And if no one objected, what would there be to appeal from? But on reflection, we think that view is unsound. The statute requires the party to appear *and* show cause; and evidently this means he must do more than merely object. He must show *good* cause, of which the court would be the judge even if he did appear. Furthermore, Sec. 2490, R. S. 1939-Mo. R. S. A., in force at the time of these proceedings, provided that appeals from county courts should be prosecuted in the same manner as from justices of the peace. And Sec. 2726, R. S. 1939-Mo. R. S. A. allowed an appeal by an aggrived party from any judgment of a justice of the peace except a judgment by confession—which made it include default judgments.

We therefore conclude an appeal under Sec. 8483 did lie from a road vacation order under Sec. 7320; that the county court acted judicially and not administratively; and that the order was a judgment. As stated, the county court was a court under Art. VI, Sec. 1, Const 1875, then in force. And as was said of (now) Sec. 7320 in Robinson v. Korns, 250 Mo. 663, 670-1, 157 S. W. 790, 792(1): "Sometimes, to be sure, the development (of a town or city) may be so retarded as to indicate that the plat has been a mistake, but the Legislature foresaw this, and provided a complete *remedy* by the early enactment of what is now (Sec. 7320), which permits the vacation of the streets, avenues or roads dedicated on such a plat . . . This proceeding . . . secures the protection of public as well as private interests."

So far we have followed appellants' line of argument. But actually, in our opinion the Iron Mountain Railroad decision, cited and reviewed earlier in this opinion, is distinguishable. There, the application was merely to lay a railroad track in the streets, not to vacate them and surrender the county's easement in or title to the land itself. Neither do we agree that an order of the county court is merely administrative unless it be appellable and the cause triable de novo. The right of appeal is purely statutory, except insofar as the Constitution grants it directly. And this is true in highway vacation proceedings. 29 C. J., p. 531, sec. 245; 39 C. J. S., p. 1060, sec. 126; 25 Am. Jur., p. 421, sec. 124. We do not say streets cannot be vacated in administrative proceedings, but we hold our statute makes the proceeding judicial. Kelley v. Waymeyer, 356 Mo. 1043, 1045-6(1), 204 S. W. (2d) 744, 745(1).

Appellants further contend that even though the county court acted as a court, and not as an administrative body in first ordering and adjudging the vacation of Gladys Avenue, and later rescinding that action during the same term, still it was a court of limited jurisdiction without common law powers; that its powers therefore must be strictly construed; and that it had no power to rescind its vacating order even at the same term. But under Art. VI, Sec. 36, Const. 1875, the county court was a court *of record*, having jurisdiction to transact such business as should be prescribed by law, and the foregoing statutes did give it exclusive jurisdiction over road vacation proceedings of the kind involved here.

That being true, within the scope of its authority it stood on the same footing as a court of general jurisdiction. Ussery [497] v. Haynes, 344 Mo. 530, 540(4), 127 S. W. (2d) 410, 416(8); Bingham v. Kollman, 256 Mo. 573, 589(1), 165 S. W. 1097, 1100(4). And it has long been held that courts of record have jurisdiction over their own records and judgments throughout the term at which they were rendered. Therefore the court had judicial power to rescind its vacation order during that term. Boegemann v. Bracey, 315 Mo. 437, 440,

285 S. W. 992, 993(1); In re Henry County Burial Assn., 229 Mo. App. 300, 304(5), 77 S. W. (2d) 124, 126(5). Furthermore, the quiet title suit here under review was a collateral attack on that record, which cannot be made. Kelley v. Waymeyer, supra, second paragraph.

We find no error in the instant record and the judgment accordingly is affirmed. *Leedy, J.*, concurs; *Tipton, P.J.*, not sitting.