JOHN R. PACK AND ELSIE MAY PACK, RESPONDENTS, v. IRA PEMBERTON AND FRANCES PEMBERTON, APPELLANTS.—218 S. W. 2d 125.

Kansas City Court of Appeals. Opinion delivered February 7, 1949.

*A. R. Alexander* for respondents.

*R. H. Musser* for appellants.

SPERRY, C.—Plaintiffs are the owners of certain real estate, located in the village of Grayson, in Clinton County, being lots 14, 15 and 16, and other lots in said town. Defendants own real estate adjoining, but outside of the city limits of Grayson, to the south. When the town was platted and its streets and alleys dedicated, in 1874, the owner of the land dedicated, among other streets and alleys, a street 30 feet wide running along the entire south side of the town. A part of this street borders lots 14, 15, and 16, supra. A part of this strip of land, 30x750 feet, is the land here in controversy. The county court, in 1928, made an order vacating all of the streets and alleys bordering these lots. Plaintiffs acquired a deed to said lots, and that part of the 30 foot street above mentioned upon which the property abutted. Said strip had been inclosed with the other lots by a fence along the south side thereof, and by a gate across the west end of same where it joins U. S. Highway 169. Defendants cut the wire and removed some of the posts of this fence and threatened to continue their destruction of the gate and fence. Plaintiffs brought this suit to enjoin further molestation of the fence, and from interference with plaintiffs' free use of their lands, including the strip in controversy. After a trial, at which both parties presented evidence, the court rendered judgment for plaintiffs and made the preliminary writ permanent. Defendants appeal.

The village of Grayson was platted in 1874, at about the time the C. R. I. & P. Ry was built through that section of the country. The land platted comprised 40 acres. A strip of land, 30 feet wide, running along the entire outer edge of, but within the city limits, was platted and dedicated as a public street. The strip along the south edge of the town, a part being the land here in controversy, was never graded or improved as a street. The evidence showed that the tracts owned by each of the parties hereto are bounded on the west by U. S. Highway 169; that the defendants' land had a fence running along

its north boundary, and the 30 foot strip adjoining had a fence which ran along its north line, eastward from the highway, for a distance of about 250 yards, at which point a fence and gate had been built across it. This condition had existed for a period of 25 or 30 years prior to the construction of the fence and gate above mentioned.

The evidence tends to prove that defendants' house sits about 100 feet east of the highway, and about 20 or 30 feet south of the north line of their property; that plaintiffs' house is located east of the highway and a short distance north of the disputed strip; that the contour of the land rises at about where defendants' house sits, so that it sits on a steep bank, overlooking the highway; that defendants can get to their front yard, from the highway, through a rather steep cut made through this bank; that it is difficult to haul loads of hay, feed, fuel, etc., through this "cut"; that this strip, if it could be used by defendants, is not too steep for loads to be taken over it, thence through a gate which defendants sought to make in the fence, and into their back yard.

The evidence also is to the effect that plaintiffs' predecessor in title removed the old fence along the north line of this strip, built a fence on the south line thereof, and installed a gate at the highway entrance; that they graded and graveled this strip and used it for a private driveway into their property; that these improvements and alterations were made prior to the date when either plaintiffs or defendants acquired their land; and that defendants saw and knew thereof when they bought their property and built a new house thereon.

The evidence regarding the use made of this strip by the public, as a road or street, prior to the building of the gate and fence, is conflicting. The evidence was all to the effect that it was never graded or improved. There was testimony that it was full of ditches, was impassable, and had not been used as a roadway by any one for a great many years prior to 1945.

However, defendants offered testimony tending to prove that the former owners of the property now owned by them, and the owners of another house located east of their property but long since destroyed by fire, used this strip as a roadway in order to reach said properties.

From the evidence it appears that the town did not develop, and remains a very small village; that on April 23, 1928, Colby and Elva Creed conveyed blocks 14, 15, 16, and other lots, to Wm. J. and Mary M. Sullivan; that on August 6, 1928, the Sullivans filed with the Clinton County court a petition, (the court record was in evidence) wherein they alleged that they were the owners of blocks, 1, 8, 9, 10, 11, 14, 15, and 16 in the village of Grayson; "that no other person is interested in said property, or in the streets and alleys hereinafter described nor do any other persons use the same except your petitioners"; and prayed that certain described streets and alleys, in-

cluding the street here in controversy, be vacated. Book No. 24, page 530, of the Clinton County court records was in evidence, and under date of September 17, 1928, it appears that said petition was by the court taken up and considered. The court found that no remonstrances had been presented, and it heard evidence on the petition.

The court found that "due notice, according to law, was given of said petition for more than 30 days before the sitting of this court, and that it is just to vacate said streets and alleys, the same being useless for road purposes. Whereupon, it is ordered and adjudged by the court that said streets and alleys be vacated and that the owners of the adjoining blocks on each side of said streets and alleys be allowed to take possession thereof and enclose the same."

Defendants contend that the proceedings leading to the judgment of vacation do not comply with the provisions of Sections 7316, 17, 18, Mo. R. S. 1939. The first of the above sections provides that any person desiring to have a street vacated may petition the county court therefor, "giving a distinct description of the property to be vacated and the names of the persons to be affected, thereby * * * ." The streets and alleys to be vacated were described in the petition, and it was alleged that petitioners were the only persons interested. The latter allegation may or may not have been true; but it met, substantially, the requirements of the statute on that point. Its truth, if material, cannot be challenged collaterally.

The remainder of the section provides that said petition shall be filed 30 days prior to the sitting of the court, and notice thereof shall be given for the same period of time, in the manner therein described. The court record, which was in evidence, recites that the court found compliance with all of such provisions. In a collateral attack on the judgment we will presume that the facts necessary to jurisdiction existed where the contrary does not positively appear. Bingham v. Kollman, 256 Mo. 573, l. c. 590; State ex rel. v. Wilson, 216 Mo. 215, l. c. 277; Duenke v. St. Louis County, 213 S. W. 2d, 492, l. c. 497.

Section 7318, in effect, provides that no vacation shall take place unless the consent of the persons owning 2/3 of the abutting property be obtained in writing, acknowledged before a justice of the peace and filed for record in the office of the recorder of deeds. Defendants specifically urge that compliance with this provision is not shown; that compliance therewith is jurisdictional; and that, therefore, the court proceedings to vacate are void. It is true that the county court record does not show the filing of any such instrument or instruments as described therein. However, the record does not affirmatively show that such instruments were not, in fact, filed nor is it shown by any other evidence. This situation calls for application of the rule declared in the above cited cases.

Absent a positive showing of a lack of compliance with the statute, as to jurisdictional matters, in a collateral attack on the judgment,

we will presume that the statutory requirements were fully met. Furthermore, it does not appear who owned the land abutting this street, on the south (the land now owned by defendants) in 1928, when the vacation proceedings were had. Perhaps the Sullivans owned that land, as well as lots 14, 15 and 16 in Grayson, for the petition recited that no other persons were interested in the streets sought to be vacated.

Defendants contend that they have a right to use of the street, as a roadway, by reason of user over a long period of years, *following* the judgment of vacation and prior to the fencing of the abandoned street. Assuming that defendants could have obtained such a right by prescription, the testimony tending to establish these facts was unsatisfactory, inconclusive, and conflicting. Some witnesses stated that the street had never been used as a public roadway, that it had been full of ditches and impassable for many years prior to its being fenced. Others stated that various parties, chiefly tenants of the property now owned by defendants and of another house located east thereof, had used this strip of land as an entranceway to said properties. The evidence was to the effect that the house formerly existing on the property now owned by defendants eventually became so dilapidated that it was unoccupied for some years prior to its purchase by defendants, who razed it and built a new house on the site; and the other house, to the east, had burned many years prior to the trial, and was never rebuilt. The trial court heard and saw the witnesses and heard the testimony. We will defer to his finding on this point.

Complaint is made that, by the judgment from which this appeal is prosecuted, it is decreed that plaintiffs are the absolute fee owners of the strip of land in controversy. The suit is not one to quiet title, but is for injunctive relief against unlawful trespass by defendants. Plaintiffs do not pray for relief in the nature of a quiet title decree, nor was it necessary to grant such relief in order to dispose of the case as pleaded and submitted. Snodgrass v. Potter, 215 S. W. 2d, 497.

The judgment should be affirmed, except as to that part thereof adjudging fee simple title to be vested in plaintiffs, which part is reversed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed, except as to that part thereof adjudging fee simple title to be vested in plaintiffs, which part is reversed. All concur.