Edward D. WEAKLEY, Charlotte G. Mandel
and Marluel E. Pohrer, Appellants,

v.

STATE HIGHWAY COMMISSION
of Missouri, Respondent.

No. 49195.

Supreme Court of Missouri.

Division No. 1.

Jan. 14, 1963.

Motion for Rehearing or to Transfer
to Court En Banc Denied
Feb. 11, 1963.

Boyle, Priest, Elliott & Weakley, Edward D. Weakley, St. Louis, Robert O. Hetlage, St. Louis, for appellants.

Robert L. Hyder, Ralph H. Duggins, Wilkie Cunnyngham, Jefferson City, for respondent.

HOUSER, Commissioner.

Plaintiffs Weakley, Mandel and Pohrer have appealed from the decree of the circuit court finding the issues against them in their suit against the state highway commission to quiet title to two narrow strips of land adjoining Utz Lane and U. S. Highway 66 in St. Louis County. The court decreed that the state, acting by and through the state highway commission, has an easement for highway purposes and the right to use, possess and control these strips, and dismissed plaintiffs' petition.

Utz Lane and Highway 66 intersect in an unincorporated area of St. Louis County. Utz Lane runs generally NW–SE. Highway 66 runs generally NE–SW. Sam and Bess Brown owned a tract of more than 83 acres of land lying in the southwest corner of these intersecting thoroughfares. On October 4, 1945 a plat of this tract entitled "Airshire Acres" was filed in the office of the recorder of deeds. Highway 66 is marked on the plat as 100 feet wide; Utz Lane 40 feet wide. The acreage, split in the middle by NE–SW Fee Fee Road, was divided on the plat into 22 long rectangular lots of from 3 to 6 acres each, approximately. All of the lots were bounded on the north by Utz Lane. Lot 1, a corner lot containing 6.671 acres, was bounded on the east by Highway 66. Marked on the plat were two shaded areas: a 50-foot strip of the acreage on the east side along Highway 66, and a 5-foot strip on the north side along Utz Lane. The plat, dated September 5, 1945, was signed by a surveying company which certified to the correct showing on the plat of the survey and subdivision of the land, as ordered by Sam Brown. The plat was signed and acknowledged by Sam and Bess Brown, owners of the tract. It was

drawn to a scale of 1 inch equals 150 feet. Restrictions were provided with respect to building lines, types of buildings to be built, minimum cost of nonbusiness buildings and the right of any owner of lots 1–22 to enforce the restrictions "by injunction suit or otherwise" was reserved. Important to this lawsuit was the provision that "The five ft. strips adjoining Utz Lane and Fee Fee Rd. and the fifty ft. strip adjoining U. S. Highway 66, as shown etched on the above plat, are hereby dedicated to public use forever." At the bottom is a certificate by the chairman that the above plat was approved by the St. Louis County Planning Commission on October 2, 1945. There was no indication of an acceptance or approval of the plat by the county council, county court or other governing body of St. Louis County.

In December, 1945 the Browns conveyed the part of Lot 1 of Airshire Acres, which later became Lot 8 of a resubdivision platted in 1946, to J. Clifford and Elbert F. Johnson. In April, 1946 the Browns conveyed the northeastern part of Lot 1 of Airshire Acres to Charles and Corinne Knebel.

On May 18, 1946, a plat entitled "Resubdivision of Part of Lot 1 of Airshire Acres" was filed in the office of the recorder of deeds. This plat divided the 6.671 acres of Lot 1 into 8 long rectangular lots of from 85 to 100 feet, approximately, in width, all bounded on the east by Highway 66. The 1946 plat shows Utz Lane as 45 feet wide (whereas it was shown on the 1945 plat as 40 feet wide); shows Highway 66 as wider than the 100 feet shown in the 1945 plat, and the NE–SW depth of the lots into which Lot 1 was carved is approximately 50 feet less than the corresponding depth of Lot 1 on the 1945 plat. In other words, the 1946 plat shows no shaded areas for the 5 and 50-foot strips, annd excludes those strips from the area platted. The 1946 plat, dated May 10, 1946, was signed by a surveying company which certified to the correct showing on the plat of the survey and subdivision of the part of Lot 1, as requested, and was signed by Sam and Bess Brown, J.

Clifford and Elbert F. Johnson, owners of the tract. Certain easements shown on the plat were dedicated to the county for public utility and sewer purposes. At the bottom the City Clerk of the City of Florissant certified that the plat was approved by the board of aldermen of the City of Florissant by Ordinance No. 187 approved on May 13, 1946. There was no indication of an acceptance or approval of the 1946 plat by the county council, county court or other governing body of St. Louis County.

In September, 1946 the Browns conveyed Lot 7 of the resubdivision to Fred J. Hardesty. Plaintiffs obtained title to their respective portions of the land which was platted as Lot 1 of Airshire Acres by mesne conveyances from the above-named grantees of the Browns. None of the descriptions in any of these mesne conveyances purported to include or incorporate the two strips which are the subject matter of this action. The description of Highway 66 and Utz Lane in the deeds from the Browns to the predecessors in title of plaintiff Weakley, and in the deeds to Weakley, recognized Highway 66 as 150 feet wide and Utz Lane as 45 feet wide.

The land in question and the adjoining properties were annexed by the City of Florissant but the ordinance of annexation was declared unreasonable and void by a decree of the circuit court entered September 6, 1949. At the time of trial this and the adjoining land was part of the Village of Hazelwood.

Plaintiff Weakley testified to the improvements placed by individual owners upon the lots in the resubdivision, and that there was no public user of the 50-foot strip from 1950 to the time of trial. Weakley claimed to have paid taxes on the 50-foot strip, but our examination of the evidence leads to the contrary conclusion. There was no evidence that Mandel and Pohrer paid taxes on the 50-foot strip. When the question of the ownership of the 50-foot strip was first raised and Weakley learned of the plans of the state highway commission to use it in

widening Highway 66, he filed a petition with the county council for vacation of the 50-foot strip. In that petition he alleged that he took title to certain lots according to the plat of the resubdivision and that in that plat the etched fifty-foot strip was "dedicated to public use forever." Weakley later abandoned his efforts to secure a vacation of the strip, and it was never formally vacated. Thereafter and in 1961 Weakley, Mandel and Pohrer secured quitclaim deeds to the 5 and 50-foot strips from the original owners, the Browns, and their contention is that the purported statutory dedication to the public was void; that there was no common-law dedication; that if the highway commission obtained any title by reason of dedication it subsequently abandoned and vacated the same by nonuser continuously for 5 years or more; that the Browns had never effectively disposed of their interest in these strips, still held their original title thereto in 1961, and that plaintiffs have succeeded to their interests by quitclaim deeds from the Browns executed in 1961.

The circuit court concluded as a matter of law that the filing of the plat of Airshire Acres with the recorder of deeds effected a statutory dedication of the disputed strips to public use forever, under Chapter 445, Plats, RSMo 1959, V.A.M.S.

■ Appellants' initial point is that the court erred in so holding, for two reasons: First, appellants say the plat was void because it "was intended as an addition to the City of Florissant" but they argue that Florissant had no jurisdiction over the area platted, as demonstrated by the final decree of the circuit court setting aside the annexation. To show the Browns intended the 1945 plat of approximately 75 acres as an addition to Florissant, appellants rely solely upon the fact that their 1946 plat of 6.671 acres was submitted to and approved by the board of aldermen; that the Browns would not have so recognized Florissant in 1946 if in the previous year they had intended to create and establish a separate

town. The submission of the 1946 plat to the board of aldermen would not have effected the vacation or invalidation of the 1945 dedication if the latter had been valid. Nor does it necessarily indicate that the Browns intended the land platted in 1945 to be an addition to the City of Florissant. If in 1946 they considered the land annexed, it would more likely indicate their intent to comply with § 445.030, which prohibits the recording of a plat of land situated in the corporate limits of any incorporated city until it has been submitted to and approved by the common council of such city. The plat is denominated a "subdivision" in certain numbered surveys, not an addition to the City of Florissant. This record does not contain sufficient evidence to support a finding that the Browns intended the subdivision platted in 1945 as Airshire Acres to be an addition to the City of Florissant.

Second, appellants say that to effect a statutory dedication under § 445.070 RSMo 1959, V.A.M.S., a landowner must file a plat of a *city, town* or *village,* or an *addition thereto,* and that Airshire Acres is no city, town, village, or addition; that there is no evidence of intention on the part of the Browns to create or establish a city, town, village, or any addition to any incorporated or unincorporated city, town or village (other than Florissant); no evidence that the plat of 22 lots along already-existing Utz Lane and Highway 66, with no new internal streets or other indicia of a community, was intended as a plat of a city, town or village. Respondent, seeking to uphold the finding of a statutory dedication, contends that where persons laying out subdivisions in unincorporated areas have made the "accurate map or plat" required by § 445.010; have drawn the plat as required by § 445.020; have acknowledged, certified and recorded it under §§ 445.030 and 445.-070, and dedicated to public use parcels of ground marked off on the plat, such subdivisions are to be regarded as "towns" within the meaning of Chapter 445, and the county should be held to have acquired title to the areas therein dedicated to public use.

In several cases plats of subdivisions in unincorporated areas of counties have been regarded as plats of cities, towns and villages within the meaning of the section now numbered 445.070, when the question of the title of the public to areas of the plat dedicated to public use was in issue. In Winschel v. County of St. Louis, Mo. Sup., 352 S.W.2d 652, the proprietors of certain land platted a subdivision called Lakewood, made up of land in McKenzie's subdivision in St. Louis County, lying outside the city limits of St. Louis. The parties agreed that there was a valid dedication of Third Avenue, shown on the plat. We said that it was "apparent that such dedication was accomplished by the filing of the above-mentioned plat pursuant to the provisions of * * * (Sections 445.010–445.120, RSMo 1959, V.A.M.S.)," 352 S.W.2d, 1. c. 653, and held that by virtue of the third paragraph of the section now numbered 445.070 the county was vested with title, in trust for use as a public street, to the land dedicated on the plat to the public use as Third Avenue. In Duenke v. St. Louis County, 358 Mo. 91, 213 S.W.2d 492, 495, this Court indicated that the county acquired title to land within the boundaries of a road set aside for public use in a recorded plat of an unincorporated subdivision in St. Louis County. And in Hill v. Hopson, 150 Mo.App. 611, 131 S.W. 357, a suit to restrain the opening of a highway through a certain tract, it was held that an answer stated a defense sufficient against demurrer which alleged that the owners of a 9-acre tract platted, subdivided and laid it out into town lots, blocks, streets and alleys, including the street in question; that the plat was duly executed, signed, acknowledged, certified, filed and recorded, and that the owners immediately offered the several lots and blocks thereby platted for sale and sold them to persons who bought relying upon the streets and alleys as so platted; that the "town" so platted is unincorporated. The lack of an averment that the county court ever accepted the dedication or that there was a user of the street by the public

was noted but held immaterial. The court said that "the plat, under the statutes above referred to * * * vests the fee of the street or alley involved in St. Francois county in trust for the use of the public —there can be no question; for the plat was of an unincorporated town." 131 S.W., l. c. 359.

In the instant case we are not prepared to sustain the holding below that there was an effectual *statutory* dedication under Chapter 445 and that the state has an easement in the disputed strips by operation of the third paragraph of § 445.070. We are ruling that the public has an easement by *common-law dedication* and acceptance by a political subdivision of the state, and that in dismissing plaintiffs' petition the circuit court ruled correctly because plaintiffs are estopped under the undisputed facts. The intention of the proprietors of the land, the Browns, to dedicate these strips to public use was unequivocally manifested by their execution and acknowledgment of the plat containing a formal, written dedication of the strips shown on the plat "to public use forever." That intention was further shown by the conveyances by which they transferred title to the purchasers of lots in the subdivision. The deeds described the lots according to the plat as recorded in the recorder's office, and by metes and bounds which recognized Utz Lane and the highway as widened by, and the lots as not including, the strips dedicated to public use. Appellants derived their interests in these controverted strips of land and in the lots platted in the subdivision, either directly from the Browns "or through mesne conveyances from [them], and in pursuance to and in conformity to the plat thereof, as expressly stated in their muniments of title, as previously shown. This alone should and does effectually and permanently estop and debar [them] from claiming any interest whatever in the land in controversy." City of Laddonia v. Day, 265 Mo. 383, 178 S.W. 741 [3], l. c. 744. Where there is no complete statutory dedication the sale of lots by reference to a plat

constitutes a common-law dedication. Moseley v. Searcy, Mo.Sup., 363 S.W.2d 561. And see Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S.W.2d 945; City of St. Louis v. Koch, 335 Mo. 991, 74 S.W.2d 622; Schell v. City of Jefferson, 357 Mo. 1020, 212 S.W.2d 430. "When [the proprietor of the land] sells and conveys the lots according to a plan which shows them to be on the streets, he must be held to have stamped upon them the character of public streets. Not only can the purchasers of lots abutting on such streets thus assert their character, but all others." City of St. Louis v. Clegg, 289 Mo. 321, 233 S.W. 1, 17 A.L.R. 1242. When the Browns conveyed the lots according to the plat showing them to abut these strips dedicated to public use, they impressed upon them the character of public areas.

A common-law dedication must be accepted. Moseley v. Searcy, supra. That the public accepted the strips in question for public use, thereby completing the dedication, is shown by the admitted fact that the property is presently a part of the Village of Hazelwood. Where a tract of land is platted and laid out as a subdivision, the plat recorded, and the territory thereafter taken into an incorporated municipality by extension of the limits, the public ways platted become the public streets of the city, 26 C.J.S. Dedication § 40b(4); Newton v. City of Dallas, Tex.Civ.App., 201 S.W. 703; Hall v. Breyfogle, 162 Ind. 494, 70 N.E. 883; Creekmore v. Central Const. Co., 157 Ky. 336, 163 S.W. 194, in the absence of evidence that the municipality, in its ordinance of annexation or otherwise, has excluded and rejected the designated public ways as public streets. As stated in Hall v. Breyfogle, supra, 70 N.E., l. c. 885: "As an evidence of approval of the addition and of acceptance of the dedication, the town extended its corporation limits to embrace *Summit Addition,* thus assuming jurisdiction over the territory and all its highways; not only over those established, but over those granted and not opened." The same rule applies to these

strips abutting the lane and highway. Their dedication to the use of the public was not lost to the public by virtue of the change in the character of the subdivision from a subdivision in a county to a subdivision in a village. Public corporations (such as counties, cities, towns and villages) are governmental subdivisions of the state and "changes in their forms, powers, and obligations do not deprive the public of their rights in public easements, * * *." Elliott on Roads & Streets, § 116, quoted with approval in Kurtz v. Knapp, 127 Mo.App. 608, 106 S.W. 537, 538.

The judgment of the circuit court is affirmed.

COIL, C., not participating.

HOLMAN, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.