Downend v. Kansas City.

DOWNEND v. KANSAS CITY, Appellant.

Division One, April 13, 1900.

1. **Streets:** APPROVAL OF PLAT. The approval by the council of a plat of a proposed addition to a city, is in no sense an acceptance of a street thereon as a public highway, nor does it cast upon the city the duty of keeping such street in repair. Not until the properly authorized city officers do some act evidencing an intention to assume jurisdiction over the street does the obligation of the city to keep it in repair begin, and not till then is the city liable for a failure to do so.

2. ———: USER. Mere user by the public will not establish a street, nor impose on the city a duty to keep it in repair. There is a wide distinction between user by the public for such a length of time as will bar the owner of the land from stopping the use, and mere user by the public when relied upon to give the land the character of a street and impose on the city the duty to repair it.

Appeal from Jackson Circuit Court.—*Hon. John W. Henry,* Judge.

REVERSED.

*R. B. Middlebrook, H. S. Hadley* and *L. A. Laughlin* for appellant.

(1) The court erred in admitting in evidence the resolutions adopted by the common council approving the plat of Mt. Evanston addition and Cook and Dudley's addition. Downend v. Kansas City, 71 Mo. App. 529; St. Louis v. St. Louis University, 88 Mo. 155; Hahn v. Sweazea, 29 Mo. 199. (2) The court erred in instructing the jury that the acceptance of Twenty-third street by the city so as to make the city liable for repairs upon it could be established solely by evidence of its use by the public as a highway. Meiners v. St. Louis, 130 Mo. 284; Baldwin v. Springfield, 141 Mo. 205;

Landis v. Hamilton, 77 Mo. 563; Garnett v. Slater, 56 Mo. App, 212; Tegarden v. McBean, 33 Miss. 283; State v. Carver, 5 Strobhart (S. C.), 217; Wilkins v. Barnes, 79 Ky. 323; Stone v. Brooks, 35 Cal. 497; Kennedy v. Cumberland, 65 Md. 514; Commonwealth v. Kelley, 8 Gratt. 632; Moore v. Cape Girardeau, 103 Mo. 470.

*William P. Borland, Willard P. Hall* and *Frank Hagerman* for respondent.

The city was bound to maintain in a reasonably safe condition Twenty-third street at the scene of the accident, because upon the facts it was dedicated to the city as a street and by it expressly accepted as such, and because it acquiesced in the public use thereof as a street. (a) Twenty-third street became a street by virtue of a statutory dedication. Reid v. Board of Education, 73 Mo. 304; California v. Howard, 78 Mo. 88; Buschman v. St. Louis, 121 Mo. 536; Brown v. Carthage, 128 Mo. 17; Meiners v. St. Louis, 130 Mo. 284. (b) Aside from the effect of the statutory dedication Twenty-third street was a street of defendant, because the long use of it by the public showed an acceptance thereof by the defendant; and the fact of platting showed an intention on the part of the owner to dedicate. Meiners v. St. Louis, 130 Mo. 274; Baldwin v. Springfield, 141 Mo. 205; Landis v. Hamilton, 77 Mo. 554; Brincke v. Collier, 56 Mo. 160; 2 Dill. Mun. Corp. (3 Ed.), 631; Beach on Pub. Corp., 1449; Cohoes v. Del. Canal Co., 47 N. Y. 612; Bauman v. Boeckler, 119 Mo. 189; Ross v. St. Charles, 49 Mo. 509; Baker v. Vanderberg, 99 Mo. 378; Kansas City Milling Co. v. Riley, 133 Mo. 574; Heitz v. St. Louis, 110 Mo. 618. (c) The fact that Twenty-third street was only two blocks long, or broken into two parts by an abrupt fall, makes no difference so far as it concerns the question of street or no street. Stone v. Brooks, 35 Cal. 489; Bateman v. Bluck, 14 Eng. L.

and E. 69; People v. Kingman, 24 N. Y. 559; Trustees v. Merryweather, 11 East 375; Wiggins v. Talmadge, 11 Barb. 461; Beach on Pub. Corp., 1448. (d) Even if it be true that a city has the supreme power to open or not open any of its streets for public travel, and even though, till so opened, it can not be held liable because of the condition thereof, and even though the city's power in this behalf be said to be legislative, yet after a city has opened any street or portion thereof for public travel its liability begins. Its duties in relation to the street or portion thereof opened become purely ministerial. Taubman v. Lexington, 25 Mo. App. 226; Brennon v. St. Louis, 92 Mo. 482; Walker v. Kansas City, 99 Mo. 652; Young v. Kansas City, 27 Mo. App. 101; Hinds v. Marshall, 22 Mo. App. 214; Jordan v. Hannibal, 87 Mo. 676. (e) A city may open a street for public travel without municipal action of any kind. Maus v. Springfield, 101 Mo. 617; Haniford v. Kansas City, 103 Mo. 181; Schenck v. Butler, 50 Mo. App. 108; Boyd v. Springfield, 62 Mo. App. 456; Walker v. Point Pleasant, 49 Mo. App. 244; Golden v. Clinton, 54 Mo. App. 100.

MARSHALL, J.—The plaintiff sues the defendant for damages for injuries sustained by her by falling on a sidewalk on what is alleged to be a public street of the city. The principal question in the case is whether it was such a public street. It is called 23rd street, and extends from Woodland avenue westwardly for a distance of about one hundred and fifty feet, at which point there is a bluff about thirty feet high, which effectually stops travel, but from the top of the bluff it extends westwardly to Highland avenue, and perhaps further.

This alleged street is claimed to have become a public street in this manner: On October 5th, 1880, Dudley and Cook laid out an addition to Kansas City, and the common council of the city, in pursuance to the duty devolved upon

it by section 9 of article 7 of its charter (1875), approved the plat. Block four of this addition, as laid out on the plat, was bounded on the north by Cottage avenue, on the east by Woodland avenue, on the south by what is here claimed to be 23rd street, and on the west by Henry street, now Highland avenue. No street was shown on the plat on the south, but a space five feet wide was left at the south end of the lots, which fronted on Cottage avenue. This space is not designated on the plat as an alley, nor as dedicated to public use in any manner, or for any purpose. It simply appears as five feet fronting on Woodland avenue and extending along the rear of said lots, westwardly for a distance of five hundred feet.

Thereafter on December 22d, 1885, Walter H. Holmes, who owned the property adjoining the Dudley & Cook property on the south, laid out an addition to the city which he called Mount Evanston addition, and the common council of the city likewise, under the charter provision referred to, approved the plat. This plat showed 23rd street, a thirty foot street, to be dedicated as a public street.

In this way solely it is claimed that 23rd street became a public street thirty-five feet wide.

Thereafter in 1887 Mr. Haynes who had become the owner of lots 22, 23, and 24 of block 4 of Dudley and Cook's addition, built two double flats on the south end of those lots, fronting them upon the alleged 23rd street. Lot 24 began fifty feet west of Woodland avenue and his property extended westwardly for seventy-five feet. He graded his lots and constructed a sidewalk four feet wide in front of his flats. He wanted to extend the sidewalk eastwardly to Woodland avenue, but the owner of lots 25 and 26, which lay between his property and Woodland avenue, would not permit him to grade in front of his lots because he had a barn built on these lots which would be inaccessible if the grading was done, so Haynes built the sidewalk in front of

lots 25 and 26 on the natural grade. In consequence of this manner of construction, there was a step, rise, or off-set of five inches in height at the dividing line between lots 24 and 25.

On the 23rd of April, 1893, about seven o'clock in the evening, while walking along this sidewalk, going eastwardly towards Woodland avenue, the plaintiff stumped her toe against this step on the sidewalk, and fell and was seriously injured.

Beyond Haynes's house on the north side of the alleged 23rd street there was a pretzel factory and several barns, and on the west side of Woodland avenue or the south side of 23rd street as shown on the plat of Mount Evanston addition, there was a grocery store.

Prior to the accident, the city had not accepted the dedication of the alleged 23rd street, unless the approval of the plats of those two additions constitutes an acceptance, and had exercised no authority over the alleged street. In improving Woodland evenue, however, the city had left an opening into the alleged 23rd street, and had placed a light in Woodland avenue at that point. The tenants of Haynes, and the operatives of the pretzel factory and the public generally, had used the five foot space shown on the Dudley and Cook plat and the thirty foot space called 23rd street on the Mount Evanston plat, for about six years before the accident to the plaintiff. The city had exercised no jurisdiction over the alleged street, but on the contrary its officers had expressly stated that "they would not have anything to do with the street."

The plaintiff had on a former trial recovered judgment against the city for two thousand dollars, but, on appeal, the Kansas City Court of Appeals reversed that judgment (Downend v Kansas City, 71 Mo. App. 529) on the ground that the approval of the plats by the common council of the city was not such an acceptance of the street by the city as

imposed the duty upon the city to keep it in repair, but that the city is not responsible for injuries received upon such streets until it has assumed control over them, "or until they have become necessary to the public and have been so used by the public as to charge a duty on the city."

On the retrial the case was submitted to the jury upon instructions that authorized a recovery by the plaintiff if the city had assumed control over this alleged street or if it was necessary to the public and had been used by the public as a street.    There was a verdict for the plaintiff for ten thousand dollars, but the court ordered and the plaintiff entered a remittitur of five thousand dollars, and judgment was accordingly entered for five thousand dollars, from which, after proper steps, the defendant appealed.

I.

The evidence does not clearly show whether or not the four foot sidewalk was built on the five foot space left by the Dudley and Cook plat at the south end of block four.

As before stated, the plat shows a strip of land, marked five feet, fronting on Woodland avenue and extending westwardly five hundred feet and running along the rear of the lots which front on Cottage avenue.

Section 6569, Revised Statutes 1879, which was in force when this plat was filed, required that when an owner laid out an addition to a city he should make out an accurate map or plat thereof showing, first, all parcels "reserved for public purposes, by their boundaries, course and extent, whether they be intended for avenues, streets, lanes, alleys, commons or other public uses; and second, all lots for sale, by numbers, and their precise length and width."

All the lots on the plat are numbered, and their precise length and width are shown.    The precise width of this five foot strip is stated on the plat and its precise length is ascer-

VOL. 156 mo—5

tainable by reference to the lots on which it abuts, but it is not numbered. So in this respect it does not comply with the plat laws then in force so as to be treated as a lot reserved for sale. Upon the principles laid down in city of California v. Howard, 78 Mo. 88, and Buschmann v. St. Louis, 121 Mo. 536, this strip may therefore be considered as having been dedicated to public use for such purposes as it might appropriately be applied to. The parties hereto treated it as an alley until the plat of Mount Evanston addition was filed and because that plat showed 23d street thirty feet wide, adjoining it on the south, they have treated it as a part of 23rd street and called that a street thirty-five feet wide, and as they so treated it we shall so deal with it in this case.

## II.

The main contention of the plaintiff is that when the common council of the city approved the Dudley and Cook and Mount Evanston plats, the city thereby accepted 23rd street, became bound to keep it in repair, and therefore is liable to plaintiff for its failure so to do.

The Kansas City Court of Appeals decided adversely to this contention, when this case was before that court, and we think properly so decided.

At the time these two plats were filed for record the plat laws of the State (R. S. 1879; chap. 139) did not require the approval of such plats by municipalities, nor was it then required that the streets and alleys dedicated by such plats should conform to the existing streets of the city or town. The Act of 1887 (Laws 1887, p. 227) required the approval of such plats by the common council of the city or town and also required a conformity to existing streets, before they could be recorded. Prior to the passage of this act, however, the charter of Kansas City (sec. 9, art. 7, Charter Kansas City, 1875) made it unlawful to make or file

any such plat unless it was approved by the common council of that city.

In State ex rel. Strother v. Chase, 42 Mo. App. 343, the Kansas City Court of Appeals held that when an owner presented a plat to the common council for approval, which conformed to the requirements of the act of 1887, the common council had only a ministerial duty to perform and was bound to approve it, and could be compelled by mandamus to approve it, and that the common council had no power to add additional conditions, qualifications or restrictions, nor could it dictate the length or width of a street or alley, since the legislature had not seen fit to require such conditions. The court construed the act of 1887 strictly, and held that the statute only required the proposed platted streets to "conform to the streets of such city, town or village, so that the streets and avenues of such additions or plats shall, as near as may be, run parallel, or be continuations on a straight line of the streets of said city, town or village, and all taxes against the property proposed to be platted shall be paid." Accordingly in that case the common council was compelled by mandamus to approve the plat.

The sole purpose of requiring plats to be submitted to and approved by the common council of a city, was to secure systematic prolongations of its streets, and thus conform to the plan upon which the city was laid out. The land owner can or can not dedicate streets or alleys to the public. He may lay out an addition and reserve all the ways and means provided for access to platted lots as private ways, but because the city has the right to condemn a private way and convert it into a public street, the city has an interest in seeing that the private ways shall, as near as may be, be prolongations of existing streets, to the end that if they are ever condemned as public streets there may be conformity and regularity.

So when a common council approves a plat of a proposed addition, this is the extent to which it binds itself. Such an approval is a certificate that the plat conforms to the

law, but it is in no sense an acceptance of the street as a public highway, nor does it cast upon the city the duty of keeping it in repair.

Such a statutory plat vests the fee to the parcels of land thereon described as intended for public use in the city (sec. 7313, R. S. 1889; sec. 6573, R. S. 1879) but neither the plat nor its approval is a present acceptance thereof by the city. As a common law dedication is a continuous, irrevocable offer to dedicate, which the dedicator can not retract, but which does not become a street until the properly constituted authorities do some act showing acceptance thereof (Heitz v. St. Louis, 110 Mo. 618; Buschmann v. St. Louis, 121 Mo. 536), so a statutory dedication vests the fee to the street in the city, but until the properly authorized city officers do some act evidencing an intention to assume jurisdiction over the same, the obligation of the city to keep it in repair does not begin and consequently it is not liable for a failure to do so. And the mere approval of the plat is not such an act of jurisdiction. [Meiners v. St. Louis, 130 Mo. l. c. 284; Baldwin v. Springfield, 141 Mo. 205; Brinck v. Collier, 56 Mo. 166; Holmes v. Jersey City, 12 N. J. Eq 299; 2 Greenl. on Evid., sec. 622.]

It follows that the mere approval of these plats by the common council of the city did not constitute an acceptance of the streets, thereon laid out, by the city, nor amount to an act of jurisdiction over them, nor impose an obligation upon the city to keep them in repair, and therefore this can not be considered a public street of the defendant city, and the city can not be held liable for defects existing therein.

### III.

The plaintiff asked and the court gave the following instructions:

"The jury is instructed that the place where the injury complained of is alleged to have occurred, was dedicated by

the owners of the land for public use as a highway, and such dedication was approved by the authorities of Kansas City in accordance with law; and you are further instructed that while such dedication and approval do not of themselves impose upon the city the duty to keep the street in repair, yet the court instructs you that, if you find from the evidence that Twenty-third street, west from Woodland to a point beyond the point where plaintiff alleges she was injured, was at the time of such alleged injury, an open thoroughfare, with dwelling houses and places of business fronting thereon, and that such thoroughfare was actually used and had been used previous thereto as a public thoroughfare by those living and doing business thereon and by people visiting and· doing business with them, and by others; that there were no fences in said street or anything to prevent free ingress and egress thereto from Woodland avenue, and that the closing of said street would inconvenience those living and doing business thereon; then so much of it, as was so used, was accepted by the city as a street, and the city was liable to keep the portion so used in a reasonably safe condition for travel."

In a word, this instruction declares the law to be that a statutory dedication and the approval by the common council of the plat do not, of themselves, impose upon the city a duty to keep the proposed street in repair, but that the use thereof by the persons living thereon and by the public, for a length of time not stated, and the fact that it was not fenced so as to prevent persons using it, and that fencing it would inconvenience persons living and doing business on it, constituted an acceptance of the proposed street by the city and imposed on it the obligation to keep it in repair.

Cases may be found in England holding that necessity and long use by the public creates a highway and imposes upon the constituted authorities an obligation to keep it in repair, and cases can be found in Missouri which hold that streets and highways may be created by prescriptive use or

by the public using them as such for a period long enough to bar the owner's right to recover under the statute of limitations, but this is, perhaps, the first case where the doctrine has been bluntly stated that the use of what is conceded not to be a street by virtue of any act of the constituted authorities, has become a street, first, because the public has used it for a time not specified, second, because the public authorities have not fenced it up so as to prevent the public from using it, and, third, because if the public authorities had fenced it up it would have been inconvenient to those living on it and their friends.

Or otherwise stated: the proper public authorities have never accepted it as a street; the public has used it for a day, a week, a year, six years, but not prescriptively or for ten years; the authorities have no power over it because they have never adopted it as a street, and notwithstanding they had no authority to do so they have never fenced it to prevent the public from using it; but the public authorities ought not to have fenced it up because it would have been inconvenient to the persons living on it and their friends if they had fenced it; therefore, it is a public street and the city is liable for injuries received on it because the city did not keep it in repair.

It is hardly possible to seriously discuss the errors and manifest incongruities which this instruction embodies.

The mere use by the public does not constitute the way a street or highway so as to cast the burden of keeping it in repair on the public authorities. As between the owner of the land and the public, prescriptive use or public use for longer than ten years bars the owner's right to close it up or to deny the use as a way. But the public acquire no right by such use to demand that the city shall keep it in repair, for the power to lay out, open and establish streets is vested by the organic law of the cities in Missouri, at least, in the city as a political subdivision of the State, and can only be

exercised by the officers and in the manner specified in the charter of the city.    Our government is a democracy, but a representative democracy.    The people have themselves vested the power in certain city officers to acquire streets, but the people have not reserved to themselves, nor has such power been delegated to them, the power to acquire streets by user, nor by user to cast the burden of maintenance upon the city.    The owner of the land may be barred by limitation or estopped by acts *in pais* from claiming that the way belongs to him, but the city is not barred or estopped into accepting that as a public street which the officers authorized by its charter to speak on that subject, have never accepted or treated as a street.

The plaintiff relies upon Maus v. Springfield, 101 Mo. 613, to support the proposition asserted in this instruction that mere user by the public will establish a street and require a city to keep it in repair.    And plaintiff quotes from the opinion in that case the following:    "To establish the character of the locality, where the injury occurred, as a part of the public street, nothing more was essential than to show that it was in actual possession of the city and open to, and used by, the public as a thoroughfare at the time."    To which should be added what was further said in the same connection:    "This plaintiff did.    It was not necessary to prove any formal dedication or appropriation of the street."

There is, perhaps, no case in the books which is oftener misapplied than the Maus' case, and none which is more generally misunderstood than that case.    It affords no foundation whatever for the statement that mere user by the public can establish a street and require the city to keep it in repair. No such question was before the court in the Maus case, and therefore the court could not have decided any such proposition.    The statement of facts in that case is:    "The alleged defect in the street was upon the cross-walk, in prolongation of the sidewalk on Phelps avenue (a much frequented thor-

oughfare) at the intersection of Benton avenue." Only this, nothing more. Now it is apparent that the court assumed that Phelps and Benton avenues were both public streets. Not only this, but neither the opinion of the court nor the briefs of counsel contain even the remotest suspicion of an intimation or suggestion that there was any issue in the case as to the street being a public street. But even if there had been any such issue in the case, what the court said would not bear out the contention that it decided that mere user by the public, without any action by the city authorities, could establish a street, so as to require the city to keep it in repair. What the court said was that it is only necessary to show "*actual possession* by the city" and that it was "open to, and used by, the public as a thoroughfare." If it was in the *actual possession* of the city and open to public use, the city must have done some act evidencing an intention to accept it as a street, and therefore it was a street by virtue of the act of the city authorities and not by virtue of user alone by the public without any act on the part of the city. Instead of deciding that mere user by the public is enough to establish it as a street as against the city, the Maus case decides that in addition to such public user the street or way or place must be shown to be in the "actual possession" of the city.

And that this was the meaning intended by BARCLAY, J., in the Maus case is conclusively shown by his later opinion in Baldwin v. Springfield, 141 Mo. l. c. 212, where he said: "The mere dedication of a city street to public use by means of a recorded plat does not of itself render the municipality liable for negligent failure to keep the street in repair. It is necessary further to show that the street in question has been accepted before that liability begins. Even an acceptance of a dedication transferring title to the street in trust for the public, does not impose a liability to keep the dedicated land in repair as a street. The latter obligation does

not attach until the corporation, in some official and appropriate manner, has invited or sanctioned its use as a street by the public. But such sanction may be given by acts of its proper officers as well as by acts in the form of ordinances. To the extent to which the city has sanctioned the use of such land by the public as a thoroughfare may the city justly be held liable for ordinary care to maintain the thoroughfare in reasonable repair for such use."

This is not only a complete refutation of the improper interpretation put upon the Maus' case, but it is directly in point in the case at bar, and decides not only that the filing of the plats and their approval by the common council did not make 23rd street a public street, but also that the use of such platted street by the general public could not give it the character of a street nor throw upon the city a duty to keep it in repair, and that it would not be a public street and such obligation to repair would not attach until the city "in some official and appropriate manner, has invited or sanctioned its use as a street by the public." In the Baldwin case the question was squarely raised, and it will be noted that it was held to be a street because the street commissioner of the city had exercised jurisdiction over it, in repairing it, and had thrown or left it open for public use.

This case states the law correctly and is in harmony with the decisions in this State and elsewhere, as is shown by the cases cited in the opinion and also by the following cases: Brinck v. Collier, 56 Mo. 166; Landis v. Hamilton, 77 Mo. l. c. 563; Meiners v. St. Louis, 130 Mo. l. c. 284; Garnett v. Slater, 56 Mo. App. l. c. 212; Mayberry v. Standish, 56 Me. 342 (where the public use was for sixty five years); State v. Wilson, 42 Me. 24; Folsom v. Underhill, 36 Vt. 580; Oswego v. Canal Co., 6 N. Y. 257; Speir v. New Utrecht, 121 N. Y. l. c. 429; Holmes v. Jersey City, 12 N. J. Eq. 299; Trustees M. E. Church v. Hoboken, 33 N. J. L. 13; Gilder v. Brenham, 67 Tex. 345; People ex rel. v. Commis-

sioners of Highway, 52 Ill. 498; Willey v. People, 36 Ill. App. l. c. 615.

The distinction should never be lost sight of between user by the public for such length of time as will bar the owner of the land from stopping the use, and mere user by the public when relied upon to give the land the character of a street and impose upon the city the duty to repair.

As between the owner and the public, the owner can stop the use by the public at any moment before his right to do so becomes barred by limitation. But the city is in a very different position, for up to the last minute of the last day of the tenth year of the use of the land by the public, the city has no right to stop the use, for it has no title to the land used, and on the first moment of the first day of the eleventh year it could not stop the use, on the principle contended for, because the ten years use by the public has established it as a street or highway and thereby cast the duty to repair upon the city. Thus it will appear that the city would be absolutely helpless to prevent its becoming a street and equally helpless to get rid of the duty to repair. The people would have established the street against the will of the city authorities and perhaps at a place which would not conform to existing streets, notwithstanding the people, by the organic law of the city, had divested themselves of the power to establish streets and had expressly vested the sole power to do so in the city as a political corporation.

This is enough to show that neither upon precedent nor principle is the contention true that mere user by the public, for any length of time, without any act of the city, of land can impress upon it the character of a street and thereby cast upon the city the duty to keep it in repair or make it liable for failure to do so.

It follows that the instruction above set out given for the plaintiff, is fundamentally wrong.

The leaving by the city of an opening to 23rd street on

Downend v. Kansas City.

Woodland avenue can not be regarded as an act adopting or assuming jurisdiction over 23rd street, for such openings are always left at intersections with private places or at entrances to private premises which have driveways into them. The placing of the light on Woddland avenue at the same point must be regarded in the same way.

This case has now been tried twice in the circuit court, once in the Kansas City Court of Appeals and once in this court, and it is fair to assume that counsel who have shown such marked ability in this case have elicited all the facts that exist as to the acts of the city with respect to this street, and that no new light could be thrown on the case by another trial, therefore, to the end that there may be an end to litigation, we hold that the plaintiff has no case against the city, and reverse the judgment of the circuit court.

All concur, except *Robinson, J.,* absent.