Joe N. MOSELEY and Billie Routh Moseley, and Charles H. Howard (Plaintiffs) Respondents,

v.

William W. SEARCY, Jr., et al., Defendants, William A. Seibel and Evelyn Seibel (Intervenors) Appellants.

No. 49125.

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1962.

Rehearing Denied Jan. 14, 1963.

William A. Seibel, Jefferson City, for appellants.

Charles H. Howard, David R. Goller, Jefferson City, for plaintiffs-respondents.

Thomas P. Rose, Jefferson City, for defendant-respondent Jefferson City.

HYDE, Judge.

Action to declare title in plaintiffs to real estate which is part of a tract designated as a park on a plat of an addition to Jefferson City. Because of the large number of lot owners in this addition, suit was brought as a class action and lot owners in each block were made defendants to represent the class. Appellants (hereinafter called intervenors), lot owners who questioned the selection of the class representatives made by plaintiffs, were permitted to intervene. The court found for plaintiffs and declared them owners in fee simple. Intervenors have appealed.

Defendant Searcy, on August 2, 1926, recorded a plat of Sunset Place Addition to Jefferson City, on land then owned by him, after approval by ordinance of the City. The plat stated Searcy did "dedicate to the public use all streets, alleys and avenues, boulevards and drives shown in and on said plat." There were two long, narrow strips of land designated on the plat as parks; one north of the northernmost street designated as "Cliff Park" above the Missouri River and the other designated as "Hays Park" between two winding streets called "Allen Avenue" and "Cole Drive" in south central part of the addition. Hays Park is the land in controversy herein. As designated on the plat, Hays Park was about 1200 feet long, generally from 100 to 200 feet wide, but still narrower at the north end. Intervenors own lots on the north side of Allen Avenue separated from the Hays Park tract only by that street. The area around Hays Park was not developed as soon as other parts of the addition on higher ground. There was testimony (intervenors' witness who was a member of the City Park Board) that "'Hays Park' was a couple of gulleys and weed patches, with a nice little ditch at each end." Several times when complaints were made, the Park Board had weeds on the tract cut and once burned some thorn trees. At one time, the Lions Club had some swings and teeter totters on the tract for about a year and the Park Board during that period had some picnic tables on higher ground west of the park area. Members of the City Park Board decided it would be impossible to do anything with the limited area designated on the plat. In cooperation with the West End Improvement Association, in 1949, they attempted to get owners of lots adjoining the Hays Park tract to donate lots to make an area large enough for development as a city park but this was not successful.

Before 1957, the streets in the Hays Park area were not improved and there were no sewer facilities. When a building contractor began to develop some lots near the west end of the park, it was decided to build a sanitary sewer. In 1957, the City had to take a position about the park, either to claim ownership and make provision out of general revenue for part of the cost of sewer and street improvements or to deny any rights in the park tract. The City Attorney advised because there was no specific mention of parks in the dedication clause of the plat, the original owner Searcy, who filed the plat, should be shown as the owner in all proceedings. (He was never located but was notified by publication against him, his wife, unknown heirs, grantees, consorts and successors.) A sewer district was established by city ordinance, sewers constructed and tax bills issued to the contractor against Searcy as owner of the park tract (also naming the City) and were foreclosed by suit in 1958. The City's answer therein disclaimed any interest in the land. Plaintiffs claim under the sheriff's

deed on sale under special execution to enforce the judgment on the tax bills. In 1959, the City filed a suit against Searcy to condemn the western part of the Hays Park tract, which had not been included in the sewer district, to use for street purposes and obtained a decree of condemnation therefor. Street improvements were built on this condemned land and improvements of other streets in the area were made which did not conform to the street designations on the plat. Plaintiffs also gave the City a street construction easement (the streets were built by tax bills against adjoining property) and a surface water drainage easement through the part of the park area conveyed by the sheriff's deed; the City, with its own funds, constructed a concrete lined drainage ditch through the middle of the park area. No assessment for taxes was ever made against the Hays Park tract until after the sheriff's sale in 1958, the first assessment being made in January 1959.

■■ Intervenors' theory (as indicated by their answer and oral argument) is that Hays Park is a public park owned by the City, dedicated, accepted and remaining as such. It is difficult to follow their brief because it does not comply with our rules, failing in "points relied on" to "show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous," as required by Rule 83.05(a) (3), V.A.M.R. Instead Intervenors' points relied on set out "only abstract statements of law without showing how they are related to any action or ruling of the Court" (in some instances conclusions of fact likewise not relating them to Court action) which subsection (e) of Rule 83.05 specifically states is not a compliance with the rule. However, since it appears from the argument in intervenors' brief that they claim the court erred in entering a decree declaring title in plaintiffs in fee simple, we will consider that contention on the merits.

■ No doubt it is true, even though parks were not mentioned in the dedication statement, that Searcy could not file a plat showing a park, sell lots shown on the plat and then claim the park land himself to use for some other purpose; nor could anyone claiming under him do so especially if he had knowledge of representations made by Searcy concerning the park in selling lots. See Hetzler v. Millard, 348 Mo. 198, 153 S.W.2d 355, where land so designated was considered to be a private park for the benefit of lot owners. See also Larkin v. Kieselmann, Mo.Sup., 259 S.W.2d 785, 788, and authorities cited. However, in this case, no lot owner claimed this land to be a private park and intervenors definitely reject that view. Intervenors' contention is that it is a public park and they base their claim, that plaintiffs did not get title, on the rights of the public to have a park there. "Where there is not a complete statutory dedication, the sale of lots by reference to the plat constitutes a common-law dedication. * * * 'In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him; but the plat should be considered as a whole, and the maker's real intention sought therefrom.' * * * Implied or common-law dedication operates upon the principle of an estoppel." Byam v. Kansas City Public Service Co., 328 Mo. 813, 41 S.W.2d 945, 949. Actually, "a common-law dedication is a continuous, irrevocable offer to dedicate, which the dedicator cannot retract." Downend v. Kansas City, 156 Mo. 60, 68, 56 S.W. 902, 904, 51 L.R.A. 170. Certainly at least there was a common law dedication of the Hays Park tract.

■■ Nevertheless, a dedication must be accepted and the court's decree is based on the theory that it was never accepted. Our conclusion is that the evidence supports that view. In 16 Am.Jur. 379, Dedication, § 31, it is said: "While it is true that the owner, by platting land and the sale and conveyance of lots with reference to the plat, is, as a general rule, estopped to deny the dedication of the parts of the tract marked on the plat as streets, alleys, parks, or other pub-

lic places, as against his grantees, or may even be estopped to revoke or deny such dedication as against the public, it does not necessarily follow that the grant thereby becomes vested in, or the dedication accepted by, the municipality. Ownership and control by the municipality may, and in a number of cases would, entail burdens and expense. It seems obvious that a municipality cannot have undesirable properties thrust upon it and be burdened with the various duties, expenses, and liabilities incident to ownership without some action, direct or implied, on its part showing acceptance, any more than a private individual can have such burdens thrust upon him without acceptance on his part." There of course can be circumstances under which acceptance can be shown by long continued public use. See Minium v. Solei, Mo.Sup., 183 S.W. 1037; McQuillin, Municipal Corporations, 3rd Ed., §§ 33.47, 33.50; The Law of Real Property, Tiffany, § 1107.

■ In Downend v. Kansas City, 156 Mo. 60, 56 S.W. 902, this court said: "The sole purpose of requiring plats to be submitted to and approved by the common council of a city was to secure systematic prolongations of its streets, and thus conform to the plan upon which the city was laid out. * * * Such an approval is a certificate that the plat conforms to the law, but it is in no sense an acceptance of the street as a public highway; nor does it cast upon the city the duty of keeping it in repair." Section 445.030 RSMo V.A.M.S., prohibits placing of record any plat of land, within the corporate limits of any city, town or village, until approved by ordinance. Thus the 1926 ordinance of Jefferson City authorized the recording of the plat but did not constitute an acceptance by it of Hays Park as a public park. See McQuillin, Municipal Corporations, 3rd Ed., § 33.48, and cases cited. The evidence in this case shows that the Hays Park tract was not suitable for a public park and that for 30 years after recording the plat the City did nothing to improve it or use it as such; and the evidence is insufficient to show that it was really used as

such by the public or was in condition to be so used. It also appears that most of the area near the park tract was vacant land for many years and that when building activity began, requiring street and sewer improvements, the City rejected any status of dedication to it of Hays Park in the most positive possible ways. "The question of acceptance is one of mixed law and fact. It is one of law insofar as it involves questions as to the nature of the acceptance, the source from which it must come, and the acts and things which may be indicative of it. It is one of fact insofar as it involves inquiries as to whether or not the requisite acts and things have been done so that legal requirements have been met." McQuillin, Municipal Corporations, 3rd Ed., § 33.59. Our conclusion is that the evidence sufficiently shows, for the court to base its decision on that view, that the land involved was never suitable for a park, was never accepted by the City as a park, and was never used by the public as a park. The one short-time attempt by the Lions Club to locate playground equipment in the area does not show any substantial use as a park in view of the Park Board's decision against developing it and the lack of interest of lot owners in enlarging the area for establishment of a public park. Therefore, we hold the court properly took the view that there never was acceptance of the tract by the City as a park or for any public purpose.

■ However, rejection by the City would not necessarily mean that title reverted to the dedicator, free and clear of all claims of lot purchasers. They could have rights against him in the nature of an easement to keep open the space shown on the map as Hays Park; and they were not parties to the suit to foreclose the tax bills either individually or as a class. See 17A Am.Jur. 650, Easements, § 40; 28 C.J.S. Easements § 44, p. 708. See also Annotation, conveyance of lot with reference to map or plat, etc., 7 A.L.R.2d 607, 650. "The general rule is that lands dedicated to public use do not revert to the dedicator because of misuse or nonuse unless use

for the dedicated purpose has become impossible or so highly improbable as to be practically impossible." McQuillin, Municipal Corporations, 3rd Ed., § 33.80; see also Dillon, Municipal Corporations, 5th Ed., § 1106; The Law of Real Property, Tiffany, § 1113; Goode v. City of St. Louis, 113 Mo. 257, 276, 20 S.W. 1048; Ginter v. City of Webster Groves, Mo.Sup., 349 S.W.2d 895, 900. Discussion of requirements of the impossibility rule will be found in Gaskins v. Williams, 235 Mo. 563, 139 S.W. 117, and Campbell v. Kansas, 102 Mo. 326, 13 S.W. 897, 10 L.R.A. 593. There also may be a reverter by legal abandonment. McQuillin, Municipal Corporations, 3rd Ed., § 33.80; Neil v. Independent Realty Co., 317 Mo. 1235, 298 S.W. 363; American Steel & Wire Co. of New Jersey v. City of St. Louis, 354 Mo. 692, 190 S.W.2d 919, 923. Therefore, the lot owners' rights in the Hays Park area as a public park, which is the basis of intervenors' claim, could be lost by reverter under the impossibility rule.

When the changes from the plat were proposed, intervenors could have sought equitable relief to compel a specific execution of the trust requiring the City to operate a public park (see McQuillin, § 33.80) but the facts about its unsuitability and nonuse would seem not to indicate much hope for success of such an effort at any time. Moreover, at the present time, after so many years of nonuse and refusal to develop the City might well have a defense of estoppel to such a suit by reason of intervenors standing by and seeing the changes made in the area by sewer, drainage and street improvements inconsistent with park use, including condemnation of part of the park tract for use as a street turnaround circle and in building streets in the park area different in design and location from the street designations on the plat, all of which might be shown to have increased the value of intervenors' property. See Goode v. City of St. Louis, supra, 113 Mo. l. c. 278, 20 S.W. 1048. However, intervenors brought no such suit and have asked no such affirmative relief against the City in their pleadings herein but instead are opposing plaintiffs' right to have title declared in them. Nevertheless, their claim is that this area is a public park; that it must be maintained and kept as such; and that their rights are to so use it with the public.

The situation shown by the evidence is that the western part of the park about 300 feet long was taken by the City and a street with a turnaround circle constructed on it, with the pavement of a through street across its eastern base; that this through street, Allen Avenue, was continued and paved along the north side of the park tract without following the designation of streets on the plat; that most of the remaining park area south and east of Allen Avenue was in gulleys and now has an open concrete lined drainage ditch through the middle of it; that the remaining area is too small and too narrow to be suitable for a public park; that the City has always refused to develop it as a park and has rejected its dedication as such; and that the changes made by the City in developing the area at least have made any use as a public park so highly improbable as to be practically impossible. In the Gaskins case, supra (235 Mo. l. c. 574, 139 S.W. l. c. 121), this court pointed out there are cases which "refer to situations where there has been an abandonment of the specified use, such abandonment being held to be equivalent to an impossibility." In the Gaskins case, in which land was dedicated for a court house site in a town which did not become the county seat, we said: "As a practical proposition, the execution of this trust has become impossible, and, under the authorities above cited, the land reverts to the heirs of the original donors." We also noted therein (l. c. 573, 139 S.W. l. c. 121) the ruling in the Campbell case, supra (102 Mo. 326, 13 S.W. 897, 10 L.R.A. 593), where land donated for a graveyard was subsequently discontinued as a graveyard, by ordinance, the remains of those buried there removed and the place converted into a park, that "such abandonment being ordered by lawful authority, is equiva-

lent to impossibility of use." On that basis, it was held that the land involved in the Campbell case reverted to the dedicators. On this same basis (abandonment equivalent to impossibility of use of this area as a public park) under all the circumstances of this case, including alteration and diminution of the area, we hold that the court properly considered Searcy to be the owner of the land by reverter so that his interest was foreclosed and transferred to plaintiffs by the suit on the sewer tax bills. Therefore, intervenors' claim must be and is denied.

The judgment is affirmed.

All concur.