**Earl HORRIGHS, et al.,
Plaintiffs-Appellants,**

v.

**James E. ELFRANK, et al.,
Defendants-Respondents.**

**No. 14718.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 7, 1987.

Janice P. Noland, Camdenton, for plaintiffs-appellants.

William Icenogle, Icenogle & Icenogle, Camdenton, for defendants-respondents.

MAUS, Judge.

This is an appeal from a judgment determining title to Lot 10 in Block 2 in First Addition to Sunny Slope Subdivision in Camden County. In addition to its number, the lot on the plat bears the word "Park". The judgment determined the defendants Elfrank and Horn, as remote grantees of the developer, owned the lot in fee simple. The plaintiffs are owners of other lots in the addition. They claim a right to use Lot 10 for park purposes and appeal.

The basic facts are not controverted. The plat of First Addition was recorded on July 11, 1959. First Addition is contiguous to the Lake of the Ozarks. Only a portion of the full plat was in evidence and is before this court. That portion shows in full four blocks containing a total of 42 lots. Eleven of those lots are contiguous to the lake. Access to the lots in those

four blocks is provided by three corridors between the blocks and one corridor north of Block 1. On the plat, these corridors bear the designation "Private Road". Each of these private roads extends to the lake. As stated, Lot 10 in Block 2 bears the designation "Park".

The acknowledged declaration of the developer on the plat includes the following statement. "All lots in said subdivision shall be sold subject to the restrictions and conditions set forth and contained in an instrument of even date to be recorded herewith in the Camden County Recorder's Office." The instrument referred to was recorded on July 11, 1959. It contained ten numbered paragraphs. Included were various restrictions on use. In addition, paragraphs 6, 7 and 10 read as follows:

6. Road designated as Sunny Slope Drive is hereby dedicated as public road for public use; other roads designated as 'private roads' are for the use of the lot owners and guests only; roads designated as private roads and abutting on the Lake, Lot Owners shall have the right to use for the launching of boats and tie-on facilities—no docks of any type at said location.

7. Those areas designated as 'parks' shall be for the use of all Lot Owners and guests only and for private non-commercial use. Dedicators reserve the right, however, to grant concessions of a commercial nature in those areas designated as 'parks'.

. . . .

10. All of the Lots and parcels of ground in said subdivision are hereby subjected to all the restrictions herein set out and said restrictions shall operate as covenants running with the land into whomsoever hands said lots or any part thsll [sic] come, and shall be enforceable at the suit of any and every owner of any lot in this subdivision.

The owners of six lots testified concerning the development of First Addition and use of Lot 10. One couple bought a lot in late 1959 or 1960. They built the third house in the addition. Another bought two lots in 1963 and used them for their residence. A third couple bought a house and lot in 1974. Another resident testified that he bought a lot in 1965. Testimony also identified six other individuals who owned a total of 16 lots.

The testimony of these witnesses concerning the use of Lot 10 was in general as follows. All lot owners used Lot 10. A boat dock containing ten slips has been anchored and attached to Lot 10 since 1960. The dock was reached by a ramp from the park. The dock was replaced at one time. It was used, managed and maintained by lot owners. That use included not only docking boats, but fishing, swimming and sunbathing. Lot 10 was equipped with playground equipment, picnic tables and a barbecue fireplace. Those items had been donated to the park. The lot was also used for outdoor recreational activities, including neighborhood visitations and picnics. It had been used for wedding anniversaries, weddings and church services. One witness testified that she handled the financial records concerning the community mowing of Lot 10. These uses of Lot 10 were continuous from 1960 until 1984.

The defendants claimed title to Lot 10 by the following chain of title. On November 28, 1978, Sunny Slope Development Co., Inc., by quit claim deed conveyed its interest in numerous lots in First Addition to Edgar M. Webb and Carolyn Webb, his wife. Lot 10 was among those lots. On October 21, 1980, the Webbs by quit claim deed conveyed Lot 10 to James R. Hager and Margaret E. Hager, his wife. The Hagers otherwise owned Lot 9 in Block 2, which adjoined Lot 10. On November 17, 1980, the Hagers by quit claim deed conveyed a part of Lot 10 to Edward Crawford and Marian Crawford, his wife. On September 17, 1982, the Hagers by quit claim deed conveyed the remaining part of Lot 10 to James E. Elfrank and Myrtle J. Elfrank, his wife. The Elfranks received a separate warranty deed for Lot 9 in Block 2 upon which a residence was located. On May 21,

1984, the Crawfords by warranty deed conveyed Lot 15 and their part of Lot 10 to Gary W. Horn and Dawn M. Horn, his wife. The conveyance in that warranty deed was made subject to all restrictions, reservations, conditions, easements and exceptions of record.

In 1982, Hager told other lot owners that he owned the park. He directed that the playground equipment and picnic tables be removed from the area. That direction was complied with. Defendants Elfrank moved to the residence on Lot 9 on Easter Sunday in 1984. Elfrank built a higher fence around Lot 10. On July 5, 1984, he barricaded the ramp to what he described as "the community boat dock." He said he did so because his insurance agent told him he would be liable if anyone got hurt on his property. At Elfrank's instance, the sheriff came to the area and advised the community to stay off of Elfrank's property.

By their brief the plaintiffs contend that upon each of four bases the lot owners in First Addition are entitled to an easement in Lot 10 for park purposes. Those bases are dedication, implied grant, prescription and estoppel. The defendants contend there is no such easement because the community use of Lot 10 was permissive and because there can be no dedication in favor of a private person or a group of private persons. In support of the last proposition the defendants cite the following. "There is no such thing as a 'dedication' between an owner and individuals. The public is the only party to a dedication. The dedication must be of a use that serves the public at large." *Marks v. Bettendorf's, Inc.*, 337 S.W.2d 585, 593 (Mo.App.1960). They also cite *Village of Climax Springs v. Camp*, 681 S.W.2d 529 (Mo.App.1984).

The creation of easements in platted areas, such as the one in question, has been recently considered by this court in *Anderton v. Gage*, 726 S.W.2d 859 (Mo.App.1987). The principles controlling the resolution of this case are reviewed in *Anderton*. It is not necessary to restate in detail those principles.

■ It is sufficient to observe that the defendants' contention that an easement for park purposes in favor of the lot owners must fail because such an easement was not granted to the general public is without merit. Confusion often exists because of a failure to observe a careful distinction between proper use of the term "dedication" to categorize the creation of rights of use in the general public and the use of that term in reference to the creation of rights of use in an individual or a group of individuals. "[T]he judgment should have declared lot (X) to have been dedicated to the use of all owners of lots in the subdivision." *Cassell v. Reeves*, 265 S.W.2d 801, 803 (Ky.1954). While such rights may coexist, there are fundamental differences in the creation of and incidents of public and private rights of use. *Moseley v. Searcy*, 363 S.W.2d 561 (Mo.1962); *Deitz v. Johnson*, 121 W.Va. 711, 6 S.E.2d 231 (1939). The general subject is analyzed and discussed in Annot., Conveyance With Reference to Plat, 7 A.L.R.2d 608 (1949). As used in the cases cited by defendants, the term "dedication" is properly used in the determination of whether or not rights of use in the general public have been created by acts constituting a statutory or common law dedication. See *Weakley v. State Highway Commission*, 364 S.W.2d 608 (Mo.1963); *State ex rel. State Highway Commission v. Public Water Supply District No. 2 of Jefferson County*, 559 S.W.2d 538 (Mo.App.1977).

■ But, those cases do not stand for the proposition that rights of use in a platted area may not be granted to or acquired by an individual or group of individuals. This is true even though the term "dedication" is used, not in the strict sense noted above, but in the sense of a grant of an easement. See *Rose v. Fisher*, 130 W.Va. 53, 42 S.E.2d 249 (1947). The relationship of public and private rights of use has been appropriately recognized in many cases. "Independent of dedication, which must be for the benefit of the general public, lot owners may acquire an easement or prop-

erty right in streets or parks by reason of reference thereto in their deeds, *or by reason of a conveyance according to a plat which shows the existence of such facilities."* *Moore v. Queener,* 62 Tenn.App. 490, 464 S.W.2d 296, 301 (1970) (emphasis in original). "[P]rivate rights to the use of land delineated in a subdivision plat exist independently of any public right that might exist by reason of a dedication, and that it is unimportant whether this rule is based on a theory of implied grant, implied covenant, or estoppel." *Huning v. Potts,* 90 N.M. 407, 564 P.2d 612, 614 (1977). "However, rejection by the City would not necessarily mean that title reverted to the dedicator, free and clear of all claims of lot purchasers. They could have rights against him in the nature of an easement to keep open the space shown on the map as Hays Park; ...." *Moseley v. Searcy,* supra, at 564.

◼ As noted, the developer by an acknowledged recorded declaration incorporated into the plat certain restrictions and conditions. Condition 6 provides that "roads designated as 'private roads' are for the use of the lot owners and guests only." There is no question but what a deed from the developer, considered with that express condition and the designation on the plat, constitutes an express grant of an easement for ingress and egress to the lot owners. The same is nonetheless true of the grant of an easement in Lot 10 for park purposes. Cf. *Hendley v. Overstreet,* 253 Ga. 136, 318 S.E.2d 54 (1984).

Further, "It is now well settled that 'when property sold is described in a conveyance by reference to a plat upon which streets are shown, there is an implied grant of an easement therein which is deemed a part of the property to which the grantee is entitled.' *Larkin v. Kieselmann,* Mo.Sup., 259 S.W.2d 785, loc.cit. 788." *Winslow v. Sauerwein,* 285 S.W.2d 21, 24 (Mo.App. 1955).

In response to these two principles, the defendants cite the following definition. "There is general agreement that a park is a place for the resort of the public. Accordingly, a park must be for the benefit of the public at large and open for the use and enjoyment of everyone rather than for the use of those few individuals who own adjoining property." 67A C.J.S. Park 604–605 (1978). In support of that definition they also cite *Thayer v. City of St. Joseph,* 227 Mo.App. 623, 54 S.W.2d 442 (1932). From that definition, the defendants argue there cannot be a grant of an easement for park purposes to other than the general public. The definition cited by the defendants may be appropriate for certain purposes. It is not appropriate to limit the interests that may be voluntarily vested in lot owners. The defendants' argument based on this definition has no merit.

◼ The cases establish that a conveyance by reference to a plat can grant a private easement for the use of an area for park purposes. "It is well settled that when a subdivision contains an attraction such as a park or lake which renders the lots more desireable [sic], the sale of lots in reference to a plat showing the attraction will create an irrevocable easement in such an area for the lot owners." *Hendley v. Overstreet,* supra, at 55. This principle has also been adopted by the Supreme Court of Missouri. "See *Hetzler v. Millard,* 348 Mo. 198, 153 S.W.2d 355, where land so designated was considered to be a private park for the benefit of lot owners. See Also *Larkin v. Kieselmann,* Mo.Sup., 259 S.W.2d 785, 788, and authorities cited." *Moseley v. Searcy,* supra, at 563. Also see *Haertlein v. Rubin,* 195 S.W.2d 480 (Mo. 1946); *Carroll v. Hinchley,* 316 Mass. 724, 56 N.E.2d 608 (1944); *Ute Park Summer Homes Ass'n v. Maxwell Land Grant Co.,* 77 N.M. 730, 427 P.2d 249 (1967); *Wilkinson v. Nassau Shores,* 1 Misc.2d 917, 86 N.Y.S.2d 603 (1949); *Putnam v. Dickinson,* 142 N.W.2d 111 (N.D.1966).

◼ The scope of the lot owner's easement to use Lot 10 for park purposes is to be determined by a construction of the plat. See generally *Anderton v. Gage,* supra.

"In construing plats of this character, we must give effect to the plain meaning and intent they exhibit by their outlines as well as by their words." *City of Caruthersville v. Huffman,* 262 Mo. 367, 171 S.W. 323, 325 (1914). "In the interpretation of maps and plats all doubts as to the intention of the owner should be resolved most strongly against him; ...." *Moseley v. Searcy,* supra, at 563.

And in case of doubt as to any ambiguity as to the meaning of the dedicator, as expressed upon the face of the plat making the dedication, as to what is intended to be donated to the public, parol evidence may be resorted to, to show how each of the parties to the dedication have treated the dedication and what they have done under the provisions thereof.

*City of California v. Burke,* 292 Mo. 466, 239 S.W. 830, 832 (1922). Also see *Bacon v. Onset Bay Grove Ass'n,* 241 Mass. 417, 136 N.E. 813 (1922).

■ In construing the scope of that easement, it is appropriate to consider the following rule:

Missouri follows the rule as set out in 28 C.J.S. Easements § 87, pages 766–767: ' ... where a way is granted or reserved without limitation as to its use, it will not necessarily be confined to the purpose for which the land was used at the time the way was created, but may be used for any purpose to which the land accommodated by the way may naturally and reasonably be devoted.... The grantee is entitled to vary his mode of enjoying the same, and from time to time avail himself of modern inventions if by so doing he can more fully exercise and enjoy or carry out the object for which the way was granted.'

*Kelly v. Schmelz,* 439 S.W.2d 211, 213 (Mo. App.1969).

■ Various definitions of a park emphasize that it is "a place for rest, recreation, exercise, pleasure, amusement and enjoyment." *State ex rel. Hammann v. Levitan,* 200 Wis. 271, 228 N.W. 140, 142 (1929). Also see *Ocean Beach Realty Co. v. City of Miami Beach,* 106 Fla. 392, 143 So. 301 (1932); *Wilkinson v. Nassau Shores,* supra; *Maisen v. Maxey,* 233 S.W.2d 309 (Tex.Civ.App.1950). The location of Lot 10 is such that it is reasonable to conclude a recreational use of that lot should include access to and the use of the lake.

Regardless of the absence of any such legend as 'community beach' on the lake area, there is no readily perceptible reason for the ten-foot right of way between what appears to be the main road of the development and the lake area except to give the owners or occupants of interior lots on this waterfornt [sic] development access to boating, bathing, swimming and fishing.

*Klein v. Dove,* 205 Md. 285, 107 A.2d 82, 85 (App.1954). Cf. *Cassell v. Reeves,* supra. Further, as stated in *Bacon v. Onset Bay Grove Ass'n,* supra, 136 N.E. at 816, "the construction of the parties shown by the subsequent use of the land may be resorted to, if such use tends to explain or characterize the deed...." That use has been detailed in the evidence. It included use for visiting, social gatherings, a playground, picnics, access to the lake and the installation and maintenance of a community boat dock.

Considering the above controlling principles of law and the uncontradicted evidence, this court has a firm belief the judgment erroneously applies the law and must be reversed. Cf. *Hendley v. Overstreet,* supra; *Carroll v. Hinchley,* supra; *Denning v. Manley,* 610 S.W.2d 51 (Mo.App. 1980). It is the duty of this court to finally dispose of the case. Rule 84.14.

Therefore, the judgment upon Count I of the plaintiffs' petition and upon the counterclaims and cross-claims of defendants James E. Elfrank and Myrtle J. Elfrank and of defendants Gary W. Horn and Dawn M. Horn in favor of said defendants is hereby reversed. Upon said Count I and counterclaims and cross-claims it is determined and adjudged that title to said Lot 10 in Block 2 in First Addition to Sunny Slope Subdivision in Camden County, Missouri, is

vested in said defendants, subject to an easement in favor of the owners of lots in said First Addition for said lot owners and their guests to use said Lot 10 for park purposes such as recreation, a playground, picnics, social gatherings, access to and use of the Lake of the Ozarks, including but not limited to maintaining a community boat dock. Judgment upon Count II of the petition for possession of said Lot 10 in favor of the defendants is affirmed. Judgment upon Count III of the petition in favor of the defendants is reversed. Upon said Count III it is determined and adjudged that the plaintiffs as lot owners in said Lot 10, together with all lot owners in said First Addition have an easement in and to use said Lot 10 for park purposes, as above set forth; and it is further determined and adjudged that said defendants Elfrank and Horn shall remove the barricade to said boat dock and obstruction to said use of said Lot 10; and said defendants Elfrank and Horn are enjoined from interfering with the aforesaid use of said Lot 10 by the owners of lots in said First Addition. The costs are assessed against defendants Elfrank and Horn.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.